UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

VISTA BELLA, INC.,                                       Case No.: 11-00149-MAM-7

    Debtor.

LYNN HARWELL ANDREWS,

    Trustee,
v.                                                            Adv. Proc. No.: 12-00060-MAM

RBL, L.L.C., ROBERT W. SHALLOW,
SUSAN SHALLOW, and RONALD H. CARR,

    Defendants.

**ORDER DENYING MOTION TO DISMISS**

    William M. Lyon, Jr., Attorney for the Trustee, Mobile, Alabama
    Lynn Harwell Andrews, Chapter 7 Trustee, Mobile, Alabama
    Mark H. Taupeka, Attorney for Defendants
    Christopher T. Conte, Attorney for Vista Bella, Inc., Mobile, Alabama

This case is before the court on the Defendants' Motion to Dismiss for lack of subject matter jurisdiction. The court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. The court has the authority to enter a final order pursuant to 28 U.S.C. § 157(b)(2). For the reasons detailed below, the Defendants' Motion to Dismiss is DENIED.

FACTS

On June 4, 2012, the Chapter 7 Trustee filed an adversary complaint against defendants Robert Shallow; Susan Shallow; RBL, L.L.C; and Ronald H. Carr (collectively, "Defendants") asserting four causes of action: (1) avoidance of fraudulent transfers pursuant to 11 U.S.C. §§

1

548 and 550; (2) avoidance of transfers under the Alabama Fraudulent Conveyance Act for Constructive Fraud pursuant to 11 U.S.C. § 544 and Ala. Code § 9-9A-1, *et. seq.*; (3) avoidance of transfers under the Alabama Fraudulent Conveyance Act for actual fraud pursuant to 11 U.S.C. § 544 and Ala. Code § 9-9A-1, *et. seq.*; and (4) for a preliminary injunction pursuant to Federal Rule of Bankruptcy Procedure 7065. The complaint was amended on June 26, 2012 to include a state law constructive trust claim and a cause of action seeking to avoid certain preferential transfers pursuant to 11 U.S.C. § 547.

The debtor in this action is Vista Bella, Inc. ("Vista Bella"). Vista Bella was the developer of a fifty unit high-rise residential development in Orange Beach, Alabama. In January of 2011, Vista Bella was the subject of an involuntary petition that was later converted to a Chapter 7 case. Generally, the underlying adversary proceeding seeks to avoid certain pre-bankruptcy transfers made by Vista Bella that the Trustee alleges to be fraudulent, the first of which occurred in July of 2007. The Trustee asserts that Vista Bella's only assets are two bank accounts containing less than $2,000 and the potential recovery from the causes of action alleged in the underlying adversary proceeding.

On July 2, 2012, the Defendants filed a motion to dismiss the Trustee's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(1). The Trustee filed a response on August 6, 2012. The court held a hearing on the Defendants' motion to dismiss on August 7, 2012 and took the matter under advisement. At the hearing, the parties indicated that the Trustee would dismiss her preliminary injunction cause of action.

LAW

The Defendants assert that, in light of the Supreme Court's recent ruling in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court lacks subject matter jurisdiction to adjudicate the underlying adversary proceeding. The Defendants' motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1), which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). A claim is properly dismissed under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate" the claim. *In re Easterly Const. Co., Inc.*, 408 B.R. 627, 629 (Bankr. M.D. La. 2009). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).

The validity of the Defendants' 12(b)(1) assertion depends on the claims asserted by the Trustee. The Trustee's complaint alleges a combination of federal and state law claims. If the Trustee's complaint alleged only state law claims, the conclusion to dismiss would be foregone. However, the Trustee also makes claims under federal bankruptcy statutes, alleging fraudulent conveyances. In this court's estimation, the Defendants' motion raises three issues. First, whether *Stern v. Marshall* divests this court of subject matter jurisdiction to hear and enter a final order as to the fraudulent transfer claims alleged. Second, if not, whether this court may hear and decide the Trustee's constructive trust cause of action. Third, whether it is otherwise appropriate for this court to hear and decide these matters. Those issues will be discussed in turn.

1.

*Stern v. Marshall* did not alter a bankruptcy court's ability to hear and finally decide fraudulent transfer actions.

3

A brief discussion of bankruptcy court jurisdiction and core versus noncore proceedings is warranted. 28 U.S.C. § 1334(a) grants federal district courts "original and exclusive jurisdiction of all *cases* under title 11." (emphasis added). Moreover, district courts possess "original but not exclusive jurisdiction of all *civil proceedings* arising under title 11, or arising in or related to cases under title 11." (emphasis added). Three distinct categories of jurisdiction are apparent in § 1334(b)'s grant: (1) those arising under title 11, (2) those arising in title 11, and (3) those related to cases under title 11. *In re Toledo*, 170 F.3d 1340, 1344-45 (11th Cir. 1999). District courts may refer the three categories of jurisdiction to bankruptcy courts via 28 U.S.C. § 157(a). In many jurisdictions, including the Southern District of Alabama, a general Order of Reference has been entered referring title 11 proceedings to bankruptcy courts. Importantly, a district court's reference only endows a bankruptcy court with the three bases of jurisdiction detailed in § 1334(b). *Toledo*, 170 F.3d at 1344 ("The bankruptcy court's jurisdiction is derivative of and dependent on these three bases.").

Bankruptcy courts may enter final orders with regard to matters "arising in" or "arising under" a case under title 11.[1] *In re Custom Contractors, LLC*, 462 B.R. 901, 905 (Bankr. S.D. Fla. 2011). 28 U.S.C. § 157(b)(1) explains that those matters "arising under" and "arising in" title 11 cases are core proceedings. In contrast, those matters that are only "related to" a case

---

[1] As stated by the 11th Circuit in *In re Toledo*, 170 F.3d 1340, 1344-45 (11th Cir. 1999):

> "Arising under" proceedings are matters invoking a substantive right created by the Bankruptcy Code …The "arising in a case under" category is generally thought to involve administrative-type matters…, or… "matters that could arise only in bankruptcy."

(internal citations omitted).

under title 11 are considered noncore.[2] *Id.* A bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court" in "related to" or noncore proceedings. 28 U.S.C. § 157(c)(1). Thus, whether a matter is core or noncore does not speak to a bankruptcy court's jurisdiction, but rather, whether the bankruptcy judge may enter a final order as to the matter. Nonetheless, "by definition all core proceedings are within the bankruptcy court's jurisdiction." *Toledo*, 170 F.3d at 1345 n.6.

11 U.S.C. § 157(b)(2) details a nonexhaustive list of core proceedings. Included in that list is § 157(b)(2)(H), which designates "proceedings to determine, avoid, or recover fraudulent conveyances" as core proceedings. In this case, the Trustee seeks to avoid particular transfers that she alleges were fraudulent pursuant to 11 U.S.C. §§ 548 and 544(b).

The Supreme Court's ruling in *Stern v. Marshall* implicated another subsection of § 157(b)(2). Section 157(b)(2)(C) designates as core proceedings "counterclaims by the estate against persons filing claims against the estate." The Supreme Court held that with § 157(b)(2)(C) Congress had, "in one isolated respect," improperly given Article I bankruptcy judges decision making power that exceeded constitutional limits. *Stern*, 131 S. Ct. at 2620. The Court deemed such a grant improper because the state law counterclaim at issue in *Stern*, which it described as a "state law action independent of the federal bankruptcy law," was reserved by the United States Constitution for decision to Article III courts. The Court explained that "[c]ongress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty,'" *id*. at 2609 (quoting *Murray's*

---

[2] "The usual articulation of the test for determining whether a civil proceeding is related to a bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000).

*Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)), and concluded that the state law counterclaim was essentially a suit at common law. The Court reasoned that:

> When a suit is made of "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," *Northern Pipeline*, 458 U.S., at 90, 102 S.Ct. 2858 (Rehnquist, J., concurring in judgment), and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts. The Constitution assigns that job—resolution of "the mundane as well as the glamorous, matters of common law and statute as well as constitutional law, issues of fact as well as issues of law"—to the Judiciary. *Id*., at 86–87, n. 39, 102 S.Ct. 2858 (plurality opinion).

*Stern*, 131 S. Ct. at 2610. With that in mind, the Court narrowly held that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S. Ct. at 2620.

It is this court's opinion that the *Stern* ruling only addressed § 157(b)(2)(C) and whether bankruptcy courts could finally decide certain state law counterclaims. Other courts have arrived at the same conclusion. *In re AFY, Inc.*, 461 B.R. 541, 547-48 (B.A.P. 8th Cir. 2012); *In re Custom Contractors, LLC*, 462 B.R. 901 (Bankr. S.D. Fla. 2011); *In re Safety Harbor Resort & Spa*, 456 B.R. 703, 715 (Bankr. M.D. Fla 2011); *In re MPC Computers, LLC*, 465 B.R. 384, 388 (Bankr. D. Del. 2012); *In re Agriprocessors, Inc.*, 2012 WL 2872054 (Bankr. N.D. Iowa July 12, 2012); *In re Nanodynamics, Inc.*, 2012 WL 2886635, at *6 (Bankr. W.D.N.Y. July 16, 2012) ("[T]he High Court's decision stands only for the proposition that 28 U.S.C. § 157(b)(2)(C) sweeps too broadly in its presumption that any and all 'counterclaims' arising from the breadth of 11 U.S.C. § 541 are properly within the 'core' jurisdiction of a bankruptcy court."). The Supreme Court did not address any other core matter detailed in § 157(b)(2). Indeed, "nothing in the Supreme Court's opinion actually limits a bankruptcy court's authority to adjudicate the

6

other 'core proceedings' identified in section 157(b)(2)." *Safety Harbor*, 456 B.R. at 715. Thus, *Stern* did not restrict a bankruptcy court's ability to hear and finally adjudicated fraudulent transfer claims, which are core matters pursuant to § 157(b)(2)(H).

Moreover, that conclusion makes sense. Bankruptcy courts should be able to hear and enter final orders regarding fraudulent conveyance claims asserted pursuant to 11 U.S.C. §§ 548 and 544(b). Section 548 and 544(b) are creatures of the Bankruptcy Code that may only be prosecuted by bankruptcy trustees (or debtors in possession) on behalf of bankruptcy estates. As such, claims made by a bankruptcy trustee pursuant to § 548 and §544(b) are not "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," *Stern*, 131 S. Ct. at 2610, because they "simply would not exist but for the bankruptcy," *Custom Contractors*, 462 B.R. at 907. In addition, that reasoning is not altered by § 544(b)'s reference to "applicable law" to avoid fraudulent conveyances. Section 544(b) allows a bankruptcy trustee to "avoid transfers that are avoidable under applicable nonbankruptcy law by certain hypothetical or actual creditors of the debtor." *In re Universal Marketing, Inc.*, 459 B.R. 573, 576 (Bankr. E.D. Pa. 2011). The Trustee does not assert a state law claim when utilizing § 544(b); rather, the Trustee relies on the power of a bankruptcy statute to avoid transfers that are otherwise avoidable under applicable state law. *Id.*; *Custom Contractors*, 462 B.R. at 907.

Fraudulent transfer actions by bankruptcy trustees are an important part of "the adjustment and restructuring of the debtor-creditor relationship," and, thus, are an important part of the bankruptcy system. *Custom Contractors*, 462 B.R. at 907. That point could not be more evident than under the facts of this case where very few assets are available to the creditors of Vista Bella beyond these fraudulent transfer actions. This Court previously stated that "[a]t a minimum, the *Stern* decision calls into question this bankruptcy court's authority to enter a final

7

order with regard to actions that are non-core and not integral to the bankruptcy case." *In re Small*, 2011 WL 7645816, at *1 (Bankr. S.D. Ala. November 22, 2011). The fraudulent transfer actions at issue in this case do not fall into that admonition. The Trustee's fraudulent transfer claims are core claims and are integral to the bankruptcy case.

The Defendants argue that *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), somehow dictates that this Court lacks subject matter jurisdiction to hear and decide the Trustee's fraudulent transfer actions. It is true that *Granfinanciera* involved the Supreme Court's consideration of fraudulent transfer actions in bankruptcy. However, like with *Stern*, the import of *Granfinanciera* must be in reference to its holding. In that case, the Court addressed "whether the Seventh Amendment confers on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them." *Id*. at 50. The Court answered that question affirmatively:

> Respondent's fraudulent conveyance action plainly seeks relief traditionally provided by law courts or on the law side of courts having both legal and equitable dockets. Unless Congress may and has permissibly withdrawn jurisdiction over that action by courts of law and assigned it exclusively to non-Article III tribunals sitting without juries, the Seventh Amendment guarantees petitioners a jury trial upon request.

*Id*. at 49. Importantly, the Court did not hold in *Granfinanciera* that bankruptcy courts lack subject matter jurisdiction to hear and decide fraudulent transfer actions.

Therefore, this court's subject matter jurisdiction with regard to the Trustee's fraudulent conveyance claims remains intact and this court may hear and finally decide those claims.

8

Case 12-00060    Doc 20    Filed 08/30/12    Entered 08/30/12 14:00:25    Desc Main
Document      Page 8 of 14

2.

Having determined that this court has subject matter jurisdiction to hear the Trustee's fraudulent transfer claims, the next issue is whether this court may also exercise jurisdiction over the Trustee's constructive trust claim.[3]

Bankruptcy jurisdiction is derivative of district court jurisdiction. Therefore, it must first be determined whether the district court could exercise jurisdiction over the constructive trust claim. *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir. 1990). District courts possess "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In accordance, the district court in this jurisdiction could properly hear and decide the Trustee's § 548 and § 544(b) claims because they arise under title 11. However, it is a separate issue whether the district court could hear the Trustee's constructive trust claim.

It is this court's opinion that the district court would have subject matter jurisdiction to hear the Trustee's constructive trust claim. First, the constructive trust claim would fall within the district court's "related to" jurisdiction. In *Matter of Lemco Gypsum, Inc.*, 910 F.2d at 788, the 11th Circuit adopted the test developed in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) for determining whether a claim is "related to" a case under title 11:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is

---

[3] The parties represented to the court at oral argument that the Trustee's preliminary injunction claim would be dismissed. Further, the Defendants did not assert a subject matter jurisdiction challenge with regard to the Trustee's 11 U.S.C. § 547 preference claims. Rather, the Defendants only indicated that they had a defense to those claims. Therefore, outside of the Trustee's fraudulent transfer claims under § 548 and § 544(b), only her constructive trust claim remains for discussion.

9

> related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Many courts refer to this test as the "conceivable effect" test. *In re Valley Food Services, LLC*, 400 B.R. 724, 729 (Bankr. W.D. Mo. 2008).

Thus, the question here is whether the outcome of the constructive trust action could conceivably have an effect on the administration of Vista Bella's estate. This court believes that it would. The Trustee seeks to impose a constructive trust upon certain "limited common elements" allegedly transferred by the Defendants and to impose the trust upon any proceeds of the transfer. The Trustee further requests that the Defendants be enjoined from transferring any proceeds, requests an imposition of a lien on any proceeds, and, alternatively, asks this court to award a judgment to the estate for the proceeds, including costs and attorney's fees. It is clear that the resolution of the constructive trust claim could conceivably have an effect on the administration of the bankruptcy estate because any recovery would increase the funds available to distribute to creditors of Vista Bella. *See Carter v. Rodgers*, 220 F.3d 1249, 1253-54 (11th Cir. 2000) (finding a claim "related to" the bankruptcy case where any recovery would "reduce the administrative expenses of the sale of the estate property and would perforce increase the amount of estate property available to satisfy creditors' claims"); *In re OCA, Inc.*, 551 F.3d 359 (5th Cir. 2008) (proceeding was "related to" the main case where a judgment had the potential to increase the estate). Therefore, the constructive trust claim is "related to" the bankruptcy case and the district court has jurisdiction to hear and decide it.

Similarly, the district court could exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and decide the constructive trust claim. The supplemental jurisdiction statute provides that "in any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367(a). The test used to determine when supplemental jurisdiction is appropriate asks whether the state law claims in consideration "arise out of a common nucleus of operative fact with a substantial federal claim." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742-43 (11th Cir. 2006).

Here, it is clear that the Trustee's constructive trust claim shares a common nucleus of operative fact with the fraudulent conveyance statutes. The Trustee's constructive trust claim refers to the same parties, circumstances, and transfers used to support its fraudulent conveyance claims. Moreover, courts have generally recognized that district courts may exercise supplemental jurisdiction in bankruptcy matters. *In re Hospitality Ventures/LaVista*, 358 B.R. 462, 473 (Bankr. N.D. Ga. 2007). Therefore, the federal district court in this jurisdiction could hear and decide the constructive trust claim alongside the fraudulent conveyance claims whether pursuant to its "related to" jurisdiction or supplemental jurisdiction.

The next question is whether the district court could refer the constructive trust claim to the bankruptcy court. It is clear that the district court could refer the constructive trust claim along with the fraudulent transfer claims to this court pursuant to its "related to" jurisdiction and § 157(a). It is less clear whether the district court could refer a claim to this court predicated solely on its supplemental jurisdiction. *See Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 771-72 (7th Cir. 2011) (recognizing a split in cases). Some courts hold that the bankruptcy court's "related to" jurisdiction includes the district court's supplemental jurisdiction. *In re Sasson*, 424 F.3d 864 (9th Cir. 2005); *Hospitality Ventures/LaVista*, 358 B.R. at 475 (finding that "§ 157(a) authorizes referral of a core-related supplemental claim because it is 'related to' the bankruptcy

11

case by its nexus with the Debtor's primary claim arising under the Bankruptcy Code…" even when that claim does not meet the conceivable effect test). Other courts hold that the outer bounds of the bankruptcy court's "related to" jurisdiction are defined by the conceivable effect test, not by the test used for supplemental jurisdiction. *See Valley Food Services*, 400 B.R. at 728-730. In those courts' view, if a claim does not meet the conceivable effect test, then it does not fall within the bankruptcy court's jurisdiction even if it would otherwise be supplemental in the district court. *Id*. However, because this court finds that the constructive trust claim is "related to" the bankruptcy case, it need not decide the supplemental jurisdiction issue.

Therefore, this court has subject matter jurisdiction to hear the constructive trust claim. However, as the constructive trust claim is merely "related to" the bankruptcy case, this court could not finally decide it. 28 U.S.C. § 157(c)(1). Instead, this court could only submit proposed findings of fact and conclusions of law to the district court for review and final decision. *Id*. That fact actually precludes a *Stern v. Marshall* challenge to this court's hearing the constructive trust claim because *Stern* only addressed whether a bankruptcy court could constitutionally enter a final order with regard to a state law claim, not whether a bankruptcy court could hear a "related to" claim and submit findings of fact and conclusions of law. *In re Heller Ehrman, LLP*, 2011 WL 4542512, at *3 (Bankr. N.D. Cal. September 28, 2011) (noting also that in "related to" proceedings, bankruptcy judges can resolve all pretrial matters).

3.

To this point, it has been determined that this court has subject matter jurisdiction to hear and finally decide the Trustee's fraudulent transfer claims and that this court may hear, but not finally decide, the Trustee's constructive trust claim. Based upon those conclusions, the

Defendants' motion to dismiss is denied. However, just because this court has subject matter jurisdiction to hear a matter does not necessarily mean that this court should hear the matter.

Two considerations unique to this case are worth noting. First, the Defendants have indicated that they plan to demand a jury trial in their answer to the Trustee's complaint. While it is not a foregone conclusion that the Defendants would be entitled to a jury trial,[4] the Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), provides support for the Defendants' request. This Court does not, at present, have the authority to try jury trial matters. Therefore, it is an open question whether the causes of action alleged in this matter, in whole or in part, would ultimately be tried in the district court based upon the jury trial request.

Second, as detailed above, this court possesses subject matter jurisdiction to hear and finally decide some of the causes of action alleged (the fraudulent transfer actions and the preferential transfer actions), but may only submit proposed findings of fact and conclusions of law regarding the constructive trust claim. From an efficiency and consistency standpoint, it might be better for the district court to hear and decide all of the claims simultaneously.

Still, a motion to withdraw the reference is not currently before the court and the Defendants have not yet filed an answer demanding a jury trial. Therefore, this court will retain this action and move it forward until such time that a jury trial is demanded. At that point, this court will determine the merits of the request and, if appropriate, recommend to the district court that the reference be withdrawn.

---

[4] This case shares similar facts to *Granfinanciera*. The bulk of the asserted claims are fraudulent transfer actions and the Defendants have not submitted proofs of claim or lodged counterclaims against the estate. However, whether the Defendants are entitled to a jury trial depends on the characterization of the Trustee's claims as equitable or legal according to the principles espoused in the Supreme Court's opinion. *See Granfinanciera*, 492 U.S. at 41-50; *In re Price*, 346 B.R. 857, 859 (Bankr. M.D. Ala. 2006).

IT IS ORDERED

1. The Defendants Motion to Dismiss for lack of subject matter jurisdiction is DENIED;

2. This matter is set for hearing on the Defendants Motion to Amend the Scheduling Order on September 11, 2012 at 8:30 am.

Dated: August 30, 2012

_____
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE