UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

VISTA BELLA, INC.,                          Case No.: 11-00149-MAM-7

    Debtor.

LYNN HARWELL ANDREWS,

    Trustee,
v.                                          Adv. Proc. No.: 12-00060-MAM

RBL, L.L.C., ROBERT W. SHALLOW,
SUSAN SHALLOW, and RONALD H. CARR,

    Defendants.

**ORDER GRANTING THE DEFENDANTS' MOTION FOR RECONSIDERATION AND GRANTING IN PART AND DENYING IN PART THE TRUSTEE'S MOTION FOR RECONSIDERATION**

William M. Lyon, Jr., Attorney for the Trustee, Mobile, Alabama
Lynn Harwell Andrews, Chapter 7 Trustee, Mobile, Alabama
Mark H. Taupeka and Max Cassady, Attorneys for the Defendants, Fairhope, Alabama

At issue are the Defendants' motion to reconsider this court's ruling as to Alleged Transfer 3 and the Trustee's motion to reconsider a different aspect of this court's ruling on Alleged Transfer 3 and to clarify its ruling on Alleged Transfer 2. This court has jurisdiction to hear and finally decide these matters pursuant to 28 U.S.C. § 157 and 1334 and the Order of Reference of the District Court. For the reasons detailed below, the Defendants' motion to reconsider is GRANTED and the Trustee's motion to reconsider is GRANTED in part and DENIED in part.

On June 4, 2013, this court entered an opinion and order granting in part and denying in part cross-motions for partial summary judgment filed by the parties. *See In re Vista Bella*, 2013

1

WL 2422703 (Bankr. S.D. Ala. June 4, 2013); Doc. 114 and 115. In it, the court considered five alleged fraudulent transfers asserted by the Trustee. The facts included in that opinion are incorporated in this opinion by reference.

Alleged Transfer 2

This court concluded in its opinion that the Debtor's release of a $350,000 vendor's lien was not a transfer under the Alabama Uniform Fraudulent Transfer Act, Ala. Code § 8-9A-1 *et. seq.* ("AUFTA") because the lien was fully encumbered, and thus, not an asset under the AUFTA's definitions. Based upon that conclusion, partial summary judgment was granted in favor of the Defendants. Now, the Trustee asks this court to clarify the reach of its holding.

The facts show that when the Debtor sold Unit PH-1 to the Shallows, the Debtor took a $350,000 vendor's lien on the property and the Shallows signed a $350,000 promissory note in favor of the Debtor. This court's holding clearly implicated the Debtor's release of the $350,000 vendor's lien. However, the holding did not address whether the Debtor's simultaneous cancellation of the promissory note amounted to a fraudulent transfer. The court did not address that argument because it did not understand that the matter was at issue. At most, the Trustee made a reference to the promissory note within her argument and never clearly asked this court to determine, as a matter of law, that it was the subject of a fraudulent transfer. In opposition to the Trustee's motion to reconsider, the Defendants' submitted a letter previously sent to the Trustee's attorney asking him to confirm that the Trustee's alleged fraudulent transfers were limited to the five transfers analyzed by the court. The Trustee confirmed that understanding and added that an additional transfer was alleged. However, that additional transfer did not involve the $350,000 promissory note.

The Trustee only asks this court to confirm that its holding with regard to the vendor's lien did not implicate the Debtor's cancellation of the promissory note. The court can confirm that it did not. Consideration of the Defendants' letter to the Trustee and the Trustee's response is unnecessary to address the Trustee's concern. Any issue about the liability of such a claim in light of the letters exchanged or any other evidence will be a trial issue. Therefore, the Trustee's motion to reconsider is granted in part.

## Alleged Transfer 3

The parties ask this court to reconsider its ruling on Alleged Transfer 3, but for different reasons. They will be discussed separately.

1.

The Defendants' assert that the court's conclusion that the Debtor held an interest in property when RBL released Unit PH-1 from its mortgage on January 26, 2009 was incorrect. Upon reconsideration, the Defendants' analysis is correct and their motion for reconsideration is due to be granted because no property of the debtor was transferred pursuant to the release.

A. § 544(b) and the AUFTA transfers

A transfer under the AUFTA requires "the disposing of or parting with an asset or an interest in an asset." Ala. Code § 8-9A-1(13). An asset is defined as "[p]roperty of a debtor" with a few limited exceptions. Ala. Code § 8-9A-1(2). Property is defined broadly as "[b]oth real and personal property, whether tangible or intangible, and any interest in property whether legal or equitable and includes anything that may be the subject of ownership." Ala. Code § 8-9A-1(11).

In its opinion, this court held that a genuine issue of material fact existed as to whether a transfer of the Debtor's statutory right of redemption was made by Curtis Wilson as an instrumentality or alter ego of Robert Shallow. Implicit in that holding was that an interest in

3

Case 12-00060    Doc 123    Filed 06/28/13    Entered 06/28/13 12:42:29    Desc Main
Document      Page 3 of 8

property of the Debtor was transferred when RBL released Unit PH-1 from its mortgage. Upon reconsideration, that assumption was incorrect because the statutory right of redemption never arose. The statutory right of redemption in Alabama arises when a piece of property is subject to a foreclosure sale. *In re McKinney*, 174 B.R. 330, 333-34 (Bankr. S.D. Ala. 1994). On January 26, 2009, the date of the transfer, the Debtor did not hold the statutory right of redemption and Unit PH-1 was never foreclosed upon. Therefore, it never arose in favor of the Debtor under Ala. Code § 6-5-248(e). Whatever interest the Debtor held on January 26, 2009 is not a recognizable property interest under Alabama law. Thus, the January 26, 2009 release did not involve property of the Debtor for purposes of the fraudulent transfer actions under the AUFTA. Partial summary judgment is granted in favor of the Defendants as to the Trustee's § 544(b) claims via the AUFTA regarding the January 26, 2009 release of Unit PH-1.

 B.   § 548 interest in property of the debtor

 Courts interpret the phrase "an interest of the debtor in property" as the general equivalent of "property of the estate." 5 *Collier on Bankruptcy* ¶ 541.03[2][a] (16th Ed. 2012). Those courts do so primarily based upon the United States Supreme Court's opinion in *Begier v. IRS*, 496 U.S. 53, 59 (1990), where the court held that "'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *See In re Cannon*, 277 F.3d 838, 849 (6th Cir. 2002) (applying the *Begier* rule to an 11 U.S.C. § 548 action); *In re Egidi*, 571 F.3d 1156, 1160 (11th Cir. 2009). Property of the estate under 11 U.S.C. § 541 is construed extremely broadly and sweeps in all sorts of interests, including interests which are contingent, speculative, non-possessory, intangible, or non-transferable. *See Segal v. Rochelle*, 382 U.S. 375 (1966); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205-06

4

(1983); *In re Prudential Lines Inc.*, 928 F.2d 565, 572 (2d Cir. 1991); *In re Neuton*, 922 F.2d 1379, 1382-83 (9th Cir. 1990); *In re Anderson*, 128 B.R. 850, 852-53 (D.R.I. 1991). Whether a debtor has an interest property, and to what extent, is determined according to state law. *Butner v. United States*, 440 U.S. 48, 54 (1979).

The Defendants argue that, on the date RBL released Unit PH-1, the Debtor had no interest in the statutory right of redemption because it only arises when a piece of property is sold pursuant to a foreclosure. It is true that a statutory right of redemption arises following a foreclosure. *In re McKinney*, 174 B.R. at 333-34. The Defendants also assert that when a party sells a piece of real property and remains subject to the debt associated with that property, that party only holds an expectancy of the statutory right of redemption until the property is actually foreclosed. This court agrees with that conclusion as well.

In this case, the statutory right of redemption could never have been part of the Debtor's bankruptcy estate. Not only did the statutory right never arise because Unit PH-1 was not subject to foreclosure, the statutory right could never have been included in the Debtor's bankruptcy estate. Even if Unit PH-1 had not been released from RBL's mortgage and had been included in the foreclosure sale, the Debtor's statutory right of redemption, which would have arisen after the foreclosure pursuant to Ala. Code § 6-5-248(e), would not have been included in the Debtor's bankruptcy estate because it would have expired prior to the filing of the petition. The foreclosure sale occurred on June 1, 2009 and the Debtor's involuntary petition was filed January 14, 2011. The theoretical statutory right of redemption would have expired one year after the foreclosure sale, well before the filing of the Debtor's involuntary case.

The Supreme Court's rule in *Begier* deems "an interest of the debtor in property" to be property that *would have been part of a debtor's bankruptcy estate* if it had not been transferred

5

prior to the petition. That rule makes sense because avoidance actions focus on transfers that diminish property of the estate. *In re Egidi*, 571 F.3d at 1160; *In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir. 1987). Here, no interest of the Debtor was transferred by the January 26, 2009 release that could have provided value to the Debtor's bankruptcy estate. That conclusion dictates that the January 26, 2009 release by RBL of Unit PH-1 from its mortgage did not involve an interest of the Debtor in property, an essential element of any § 548 action. Without that element, the Trustee cannot maintain its § 548 claims as to the January 26, 2009 release. Partial summary judgment in favor of the Defendants as to Alleged Transfer 3 is appropriate.

2.

The Trustee asks this court to reconsider its ruling on Alleged Transfer 3 for a different reason. She asserts that this court's determination that RBL could release Unit PH-1 without notice to the Debtor and without a corresponding reduction of the liability owed by the Debtor was erroneous. As stated in the opinion, the promissory note held by RBL allowed RBL to release any collateral, without notice to the Debtor, and without any reduction in the debt. The Trustee argues that the note is unenforceable. The Trustee's argument is unsupported and incorrect.

First, the Trustee cites no law in support of its position that a provision in a promissory note allowing for release of collateral without a corresponding reduction of debt makes that provision unenforceable. Second, the law that RBL does cite only refers to sales of real property, not releases. The January 26, 2009 transaction was a release, which the promissory note provided for. Even if the part of the promissory note provision that refers to sales without notice and without a corresponding reduction of debt were found to violate Alabama law, the release

6

portions could still be enforced. *See Ex Parte Celtic Life Ins. Co.*, 834 So. 2d 766, 769 (Ala. 2002) (explaining that Alabama courts, even in the absence of a severability clause, will excise void or illegal provisions of a contract and enforce the remaining provisions). The promissory note contained a severability clause which stated: "If any provision of this Note shall be unenforceable or invalid under applicable law, then the remaining provisions of this Note shall not be affected thereby but shall remain in full force and effect." No provision of Alabama law makes the release language of the promissory note unenforceable.

The Trustee argues alternatively that every contract in Alabama imposes a duty of good faith and fair dealing on the parties and that the Defendants did not act in accordance with that duty in releasing collateral without crediting the debt for the value of the property released. In support, the Trustee cites the following language from *Lloyd Noland Foundation, Inc. v. City of Fairfield Healthcare Authority*, 837 So. 2d 253, 267 (Ala. 2002): "There is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract; . . . in every contract there exists an implied covenant of good faith and fair dealing." That rule essentially protects the reasonable expectations of the parties in carrying out the purposes for which the contract was made. *Id*. The original parties to the promissory note, which included the Debtor, were sophisticated parties involved in a $36,400,000 deal for the development of real estate. Both parties expected to profit from the deal and negotiated in good faith with regard to the documents that created the legal relationship. The original note holder, AmSouth Bank, expected the bargained-for provisions of the note to be enforced. The subsequent note holders Regions and RBL expected the same. If the Debtor felt that such a provision in the promissory note was unfair at the outset, it could have

7

Case 12-00060    Doc 123    Filed 06/28/13    Entered 06/28/13 12:42:29    Desc Main
Document    Page 7 of 8

negotiated for different language. Both parties received their reasonable expectations under the loan documents.

Despite that, the Trustee argues that this court already determined that Robert Shallow and the Defendants did not act in good faith. The Trustee fails to acknowledge that what this court determined was that Robert Shallow and the Defendants lacked the requisite good faith to utilize the good faith transferee defenses in § 548(c) and the AUFTA. That is not a finding of a general lack of good faith that might or should be applied in every circumstance.

THEREFORE IT IS ORDERED

1. The Defendants' motion to reconsider is GRANTED and partial summary judgment is GRANTED in favor of the Defendants as to the January 26, 2009 release of Unit PH-1 as a fraudulent transfer under § 548 and § 544 via the AUFTA because no interest in property of the Debtor was transferred pursuant to the release.

2. The Trustee's motion to reconsider is GRANTED in part and DENIED in part, as detailed above.

3. This case remains set for pretrial hearing on July 23, 2013 at 10:00 a.m. in Court Room 2, 201 St. Louis Street, Mobile, Alabama, 36602.

Dated:   June 28, 2013

_____
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE